UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN GRANDE,<br> *Plaintiff*, | 19-cv-00184 (KAD) |
| v. | |
| HARTFORD BOARD OF EDUCATION,<br>JAY MIHALKO, CITY OF HARTFORD,<br> *Defendants*. | January 7, 2020 |

**MEMORANDUM OF DECISION RE:**
**DEFENDANTS' MOTION TO DISMISS (ECF NO. 18)**

Kari A. Dooley, United States District Judge:

Plaintiff John Grande ("Grande" or the "Plaintiff") filed this action in Connecticut Superior Court on January 7, 2019 against the Hartford Board of Education (the "Board"), Jay Mihalko ("Mihalko"), and the City of Hartford (the "City," and, collectively, the "Defendants"). The Defendants removed the case to this Court on February 6, 2019. (ECF No. 1.) The Plaintiff, a physical education teacher for the Hartford school system, brings *inter alia*, claims pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60 *et seq.* (Counts One, Two, Five, and Six), and a claim for negligent infliction of emotional distress (Count Eight).[1] On March 15, 2019, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as to Counts One, Two, Five, Six, and Eight of Grande's complaint. (ECF No. 18.) Grande filed an opposition to the motion to dismiss on April 29, 2019 (ECF No. 27), Defendants filed a reply brief in support of their motion on June 3, 2019 (ECF No. 30), and Grande filed a sur-

---

[1] The Plaintiff also brings claims under the Americans with Disabilities Act (Counts Three, Four, and Seven), a slander and libel claim against Mihalko (Count Nine), an intentional infliction of emotional distress claim (Count Ten), and a claim pursuant to 42 U.S.C. § 1983 (Count Eleven.)

1

reply with the Court's permission on August 7, 2019.  (ECF No. 37.)  For the reasons that follow, Defendants' motion is GRANTED.

**Allegations**

Grande was at all relevant times employed by the Board as a physical education teacher at Noah Webster MicroSociety Magnet School in Hartford ("Noah Webster"), where Mihalko served as Principal.  (Compl. ¶¶ 1, 3, ECF No. 43.)  Grande alleges that he needs to wear headphones at work for protection because he suffers from tinnitus.  He alleges that the Defendants discriminated against him by creating a hostile work environment in the face of his disability and by ultimately eliminating his teaching position without justification.

Specifically, the Plaintiff alleges that he was wearing headphones for his tinnitus while on cafeteria duty on October 10, 2016.  (Compl. ¶ 7.)  Mihalko asked him for a doctor's note but Grande had not obtained one.  (*Id*. ¶ 8.)  Following this incident, Grande alleges that Mihalko began threatening to discipline Grande for insubordination if he continued wearing the headphones and instructed Noah Webster's Vice Principal, Richard Skowronski ("Skowronski"), to tell Grande that he was not permitted to wear the headphones to work.  (*Id.* ¶¶ 8, 10.)  Grande emailed both Mihalko and Skowronski to inform them that he believed their conduct constituted workplace harassment (*id.* ¶¶ 9, 13) and thereafter obtained a doctor's note "stating that it is medically necessary for Plaintiff to wear ear protection for loud noises."  (*Id.* ¶ 14.)  Grande alleges that Mihalko continued to mock him by turning the music down in Grande's class on three separate occasions, even though it was not loud or bothersome.  (*Id.* ¶¶ 15–19.)  On December 14, 2016, Mihalko allegedly conducted a review of Grande's class as part of an annual evaluation in which he wrote negative comments about Grande and indicated that Grande "needs improvement" in one

of the relevant categories. (*Id.* ¶¶ 21–22.) Prior to that time, Grande had always received evaluation scores that rated him "effective" to "highly effective." (*Id.* ¶ 23.)

On February 2, 2017, Grande filed a complaint with the Connecticut Commission for Human Rights and Opportunities ("CHRO"). (*Id.* ¶ 25.) Grande alleges that approximately three weeks later, on February 24, he was called to Mihalko's office and informed that his position was being eliminated at Noah Webster. (*Id.* ¶ 27.) When asked to provide an explanation Mihalko allegedly stated, "[t]hese are decisions that I have to make to move the school forward." (*Id.* ¶ 28.) Grande emailed Mihalko following that meeting and reiterated his belief that he was being harassed. (*Id.* ¶ 30.) The next day, Grande needed to resolve an issue between two students and Mihalko allegedly complimented Grande for the way that he handled the situation. (*Id.* ¶¶ 31–32.) A few days later, however, Grande alleges that Mihalko called Grande to his office with Skowronski present and accused Grande of threatening him at the February 24 meeting, which Grande denied. (*Id.* ¶¶ 33–34.) Grande alleges that Mihalko followed up with a letter memorializing his accusation, which was forwarded to various administrators, including Mihalko's supervisors, and which included a recommendation that Grande participate in harassment training. (*Id.* ¶¶ 35–36.) Grande responded by sending an email to Mihalko and all those copied on Mihalko's letter and thereafter filed an amended CHRO complaint. (*Id.* ¶¶ 37, 39.) He alleges that individual(s) from the Board tampered with Grande's evaluation for the 2016-2017 school year after he filed his CHRO complaint in order to cover up the Defendants' hostile treatment, and that witnesses for the Board gave false statements and manipulated the facts at a February 2018 CHRO fact-finding conference. (*Id.* ¶¶ 44–45.)

Grande claims that he has suffered severe emotional and mental distress from Defendants' actions resulting in sleeplessness, post-traumatic stress disorder, and anxiety. (*Id.* ¶ 48.) He also

3

alleges that he hesitated to intervene in a physical altercation between two students because he was aware that he was being video recorded and because of his ongoing concern regarding his hostile work environment. (*Id.* ¶¶ 40–42.) Because he did not allow himself to engage physically in the altercation, Grande claims that he injured his knee, was placed on worker's compensation for seven weeks, and was unable to perform his part-time work as a stage hand for concerts. (*Id.* ¶¶ 42–43.)

Although not alleged in the complaint, the parties acknowledge that the CHRO issued a "Finding of No Reasonable Cause" on the Plaintiff's CHRO complaint on August 7, 2018, in which it "conclude[d] that there is **no reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint." (Defs.' Mot. Ex. C at 5, ECF No. 18-4; Pl.'s Opp. Ex. A at 5, ECF No. 27-1.) Thereafter, the Plaintiff filed this action in the superior court on January 7, 2019.

Grande brings hostile work environment, disparate treatment, and retaliation claims against the Board, Mihalko, and the City under the CFEPA and a claim for negligent infliction of emotional distress against the Board and the City. Defendants have moved to dismiss the CFEPA claims because Grande did not obtain a release of jurisdiction from the CHRO and because he failed to exhaust his administrative remedies against Mihalko and the City.[2] The Board and the City also move to dismiss the claim for negligent infliction of emotional distress pursuant to Fed. R. Civ. P. 12(b)(6).

**Standard of Review**

With respect to the CFEPA claims, although styled as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Defendants acknowledge that the failure to obtain a release of jurisdiction from

---

[2] Defendants alternatively move to dismiss Counts One and Two against Mihalko on the grounds that he is not the Plaintiff's employer, even though Mihalko is not expressly named in Counts One and Two of the complaint. The Court does not address this argument.

4

the CHRO implicates this Court's subject matter jurisdiction. (*See* Defs.' Mem. at 6–7.) "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (*per curiam*) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 122 (D. Conn. 2018) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). "[T]he party asserting subject matter jurisdiction 'bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" *P. v. Greenwich Bd. of Educ.*, 929 F. Supp. 2d 40, 45–46 (D. Conn. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

With respect to the motion to dismiss the negligent infliction of emotional distress claim under Rule 12(b)(6), the Court must similarly accept the complaint's factual allegations as true and draw inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "In addition to the allegations of the complaint, the Court may also consider matters of which judicial notice may be taken," which "include the decisions of an administrative agency." *Hohmann v. GTECH Corp.*, 910 F. Supp. 2d 400, 405 (D. Conn. 2012). The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

**Discussion**

**The CFEPA Claims – Counts One, Two, Five, and Six**

Employees who believe that an employer has violated the CFEPA must, by statute, first pursue administrative remedies with the CHRO. *See Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 196 Conn. 208, 215–16, 491 A.2d 1096 (1985) (explaining that "CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO."). Under certain circumstances, such an employee can also pursue CFEPA claims in the superior court. *See, e.g.*, *Hinde v. Specialized Educ. of Connecticut, Inc.*, 147 Conn. App. 730, 746, 84 A.3d 895 (App. Ct. 2014) (explaining the processes for either appealing a final order of the CHRO or for filing a direct action in superior court upon obtaining a release of jurisdiction). In this vein, section 46a-100 of the Connecticut General Statutes provides in relevant part that "[a]ny person who has filed a complaint with the [CHRO] . . . and who has obtained a release of jurisdiction in accordance with section . . . 46a-101, may bring an action in the superior court . . . ." Section 46a-101(a) in turn provides that "[n]o action may be brought in accordance with section 46a-100 unless the complainant has received a release from the [CHRO] in accordance with the provisions of this section." A release of jurisdiction may be jointly requested by the complainant and the respondent "at any time from the date of filing the complaint," or by the complainant alone "if the complaint is still pending after the expiration of one hundred eighty days from the date of its filing or after a

case assessment review . . . whichever is earlier." *Id*. § 46a-101(b). The release of jurisdiction triggers administrative dismissal or disposal of the complaint, and the complainant has 90 days from the date of receipt of the release to file an action in court. *Id.* § 46a-101(d)-(e).

Here, the Defendants assert and the Plaintiff concedes that he did not obtain a release of jurisdiction from the CHRO prior to bringing this lawsuit. Accordingly, the Defendants assert that this Court is without jurisdiction to hear the Plaintiff's CFEPA claims.

The Connecticut Supreme Court has made clear that the failure to exhaust administrative remedies or to obtain a release of jurisdiction from the CHRO implicates the Court's subject matter jurisdiction to hear CFEPA claims. *See Sullivan*, 196 Conn. at 217–18 ("[T]his plaintiff had available to him administrative remedies that could have afforded him meaningful relief under the federal and state statutes that govern his claim of age discrimination. His failure to . . . bring his complaint to the CHRO forecloses his access to judicial relief, because it deprived the trial court of jurisdiction to hear his complaint."). Not surprisingly therefore, "[t]he courts of this District have consistently applied the exhaustion provisions of the CFEPA to dismiss discrimination claims, finding a lack of subject matter jurisdiction where the plaintiff failed to obtain the requisite release prior to pursuing a private cause of action in court." *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) (citing cases); *see also, e.g., Fried v. LVI Servs., Inc.*, 557 Fed. App'x 61, 63 (2d Cir. 2014) (summary order) ("It is undisputed that CFEPA claims must initially go through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction.") (citing *Sullivan*, 196 Conn. at 215–17).

Notwithstanding this precedent, the Plaintiff argues that because the CHRO issued a final decision, he exhausted his administrative remedies and was not required to obtain a release of jurisdiction in order to bring the instant case. He relies upon the language of the statute that speaks

7

only to requests for a release "if the complaint is still pending after" 180 days, Conn. Gen. Stat. § 46a-101(b), but does not address at all the issuance a release after the CHRO has rendered a decision. In an email exchange between Grande and an employee of the CHRO on August 24, 2018, Grande, who was *pro se* during the administrative proceedings, indicated that he was "awaiting my release of jurisdiction letter," to which the employee responded that "you cannot request for a release of jurisdiction on a closed case." (Pl.'s Sur-Reply Ex. B, ECF No. 37-1.)[3] Indeed, there does not appear to be either a statutory or regulatory procedure for obtaining a release of jurisdiction once the agency has issued a final decision. From this, the Plaintiff argues that by negative implication, no release is required. The Court disagrees.

In *Catalano v. Bedford Assocs., Inc.*, 9 F. Supp. 2d 133, 135 (D. Conn. 1998), the plaintiff argued "that a release is not required because his complaint to the CHRO was dismissed." The District Court rejected this position, noting that "[s]ubject matter jurisdiction does not exist where a plaintiff has not obtained a release from the CHRO, and has therefore failed to comply with the clear and unambiguous statutory prerequisite embodied in General Statutes § 46a-101." *Id.* (quotation marks and citation omitted).[4] *See also Ghaly v. Simsarian*, No. 3:04-CV-01779 (AWT), 2009 WL 801636, at *1, *6 (D. Conn. Mar. 26, 2009) (concluding that court lacked jurisdiction over claims asserted in plaintiff's second CHRO complaint, which was dismissed by the CHRO

---

[3] Grande represents that his counsel also contacted the CHRO investigator, who confirmed that a release of jurisdiction is not issued after a "Finding of No Reasonable Cause." (Pl.'s Opp. at 6 n.2.) Counsel has not included an affidavit to this effect, though Grande has included a copy of an email from the CHRO Legal Division to counsel dated April 24, 2019, in which the CHRO confirmed that Grande's "complaint was no longer pending" once Grande received the "final determination of No Reasonable Cause." (Pl.'s Opp. Ex. B, ECF No. 27-2.) The Plaintiff also points to a relevant CHRO regulation, which sets forth the circumstances under which the CHRO is required to issue a release of jurisdiction—for example, where the complaint is dismissed following an initial case assessment review, *see* Regs. Conn. State Agencies § 46a-54-66a(c) (citing Conn. Gen. Stat. § 46a-83(c)), but which says nothing about the issuance of a release after a "Finding of No Reasonable Cause" has been rendered.

[4] While the statute has been amended three times since it was enacted, it has always stated that "no action may be brought in accordance with section 1 [*i.e.*, Section 46a-100] of this act unless the complainant has received a release from the [CHRO] in accordance with the provisions of this section." S.B. 292, 1991 Gen. Assemb., Reg. Sess. (Conn. 1991). Any amendments to the statute have no bearing on the issue presented here.

8

upon "finding no reasonable possibility of discrimination" and which was not followed by the issuance of a release of jurisdiction); *White v. Martin*, 23 F. Supp. 2d 203, 204–06 & n.3 (D. Conn. 1998) (dismissing CFEPA claims for lack of jurisdiction where CHRO "issued a 'Notice of Final Agency Action'" dismissing the plaintiff's case on the merits and where plaintiff failed to substantiate his claim that he requested but did not receive a release from the CHRO), *aff'd sub nom. White v. Comm'n of Human Rights, Opportunities*, 198 F.3d 235, 1999 WL 973622, at *2 (2d Cir. 1999) (unpublished) (observing that "the plaintiff has provided an inadequate basis for his conclusion that the CHRO must provide a release when it dismisses a complaint.").

In addition, upon receiving the final decision from the CHRO, the Plaintiff was not without recourse. He could have sought reconsideration of the ruling. *See* Regs. Conn. State Agencies § 46a-54-61a(b) ("A copy of the final finding shall be transmitted to the complainant and the respondent by certified mail or other mail service that confirms receipt, with copies to counsel appearing in behalf of parties by first-class mail. The complainant shall simultaneously be notified of the complainant's right to request reconsideration of the investigator's finding.") The Plaintiff also had the option of bringing an administrative appeal to seek judicial review of the decision. *See, e.g.*, *Gur v. Nemeth-Martin Personnel Consulting, Inc.*, No. CV-980331118S, 2001 WL 357356, *4 (Conn. Sup. Ct. March 20, 2001) ("[T]he Plaintiff's only available avenue to the Superior Court, other than filing an administrative appeal pursuant to §46a-94a, was to request a release to sue pursuant to §46a-101."); *see also Anderson*, 718 F. Supp. 2d at 271 (explaining that "[o]nce the CHRO issues a final order or dismisses the complaint, the complainant may then appeal to the Connecticut Superior Court."). Given this alternative path to judicial review of the CFEPA claims, it is logical that the legislature would not provide a procedure to obtain a release of jurisdiction for purposes of pursuing a *de novo* hearing of those claims after they had received a

9

full hearing on the merits. *See Gur*, 2001 WL 357356, at *5 (The plaintiff, "having invoked the procedures of CHRO and having not sought a release to sue de novo in Superior Court when she could have, is bound to seek her remedies and relief for her statutory discrimination claims pursuant to the administrative appeals procedure set forth in §46a-94. To hold otherwise would allow persons to invoke the full administrative processes of CHRO as set forth in the CFEPA resulting in a complete merits review and determination of their statutory discrimination claims, blithely ignore the results of that process, and subsequently, initiate a *de novo* judicial proceeding on the same claims. As in this case, that seriatim process would inevitably take several years or more and is not what the Connecticut legislature intended.").

Thus, the Plaintiff's argument that a release is not required if the CHRO renders a final decision is against the weight of logic, the statutory framework of the CFEPA, and the available authority. Indeed, the Plaintiff provides no authority for his argument or for the proposition that a final decision by the CHRO renders the clear and unambiguous language of the statute, that "**no action may be brought** in accordance with section 46a-100 unless the complainant has **received a release from the [CHRO] in accordance with the provisions of this section**" somehow inapplicable. Conn. Gen. Stat. § 46a-101(a) (emphasis added).

Perhaps in light of the authority cited by the Defendants, in his sur-reply, Grande appears to change tack. He acknowledges the viability of Defendants' position by accepting that it "would be correct" were he not *pro se*. (Pl.'s Sur-Reply at 2.) He urges the Court to countenance his good faith belief that he followed the proper procedure, and, in essence, create a good faith exception to the requirement that he obtain the release of jurisdiction. The Court accepts that Grande, as a self-represented complainant, mistakenly believed that he needed to await a final CHRO decision before requesting a release of jurisdiction and further that he discovered the appropriate procedure

10

at a time when the opportunity to invoke it had already passed. But as discussed above, the pre-suit release requirement is unambiguous and unbending. And this Court cannot confer subject matter jurisdiction upon itself through a judicially created exception to the statutory release requirement. *See Hinde*, 147 Conn. App. at 747–48 (rejecting plaintiff's argument that the court should treat her failure to exhaust her administrative remedies with the CHRO as a waivable precondition to suit rather a jurisdictional prerequisite when the Connecticut Supreme Court has clearly determined that such a defect is jurisdictional); *see also Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1996) ("It is elementary that a federal court cannot create jurisdiction where none exists."). Further, "[a]bsent ambiguity, courts cannot read into statutes by construction, provision[s] that are not clearly stated." *Silver v. Holtman*, 149 Conn. App. 239, 254, 90 A.3d 203 (App. Ct. 2014) (quotation marks and citation omitted). The Court therefore concludes that it lacks subject matter jurisdiction over Grande's CFEPA claims. Counts One, Two, and Six against the Board and the City and Count Five against Mihalko are dismissed.[5]

**Negligent Infliction of Emotional Distress**

A plaintiff seeking to recover for negligent infliction of emotional distress must demonstrate that: "'(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.'" *Vega v. Sacred Heart Univ., Inc.*, 871 F. Supp. 2d 81, 85 (D. Conn. 2012) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003)). A plaintiff, however, cannot bring such a claim for acts occurring during an ongoing employment relationship, because "[n]egligent infliction of emotional distress in the employment context arises

---

[5] The Court does not therefore reach the alternative arguments for dismissal of these claims.

only when it is based upon unreasonable conduct of the defendant in the termination process." *Grasso v. Connecticut Hospice, Inc.*, 138 Conn. App. 759, 771, 54 A.3d 221 (App. Ct. 2012) (quoting *Perodeau v. Hartford*, 259 Conn. 729, 750, 792 A.2d 752 (2002)). "The Connecticut Supreme Court has not specifically ruled on the temporal boundaries of the termination process. However, the reasoning in *Perodeau* makes clear that this process does not begin . . . at the action that causes the employer-employee relationship to deteriorate." *Tomick v. United Parcel Serv., Inc.*, 511 F. Supp. 2d 235, 238 (D. Conn. 2007) (quotation marks and citation omitted).

Defendants assert that Grande cannot state a claim for negligent infliction of emotional distress because he was not terminated and in fact, remains an employee of the District. And Grande acknowledges that he was ultimately assigned to another school within the District and was not actually terminated. (*See* Pl.'s Opp. Ex. A ¶ 21 (stating that Grande was reassigned to another school on May 22, 2017).) Notwithstanding, he argues that he can recover for negligent infliction of emotional distress for acts taken during the "termination process," which he argues commenced on February 24, 2017—when Grande alleges that he was first informed that his position was being eliminated. (Pl.'s Opp. at 14.) Specifically, Grande relies on the allegations that: Mihalko convened the disciplinary meeting and accused Grande of threatening him (Compl. ¶¶ 33–34); Mihalko made the same accusation in a letter which was forwarded to other District administrators (*id*. ¶¶ 35–36); and that Defendants tampered with his personnel file and made false representations to the CHRO. (*Id.* ¶¶ 44–45.) These allegations concern acts undertaken by the Defendants after Grande was apprised that his position was being eliminated but before Grande was allegedly aware that he would be reassigned. Taking the facts alleged as true and drawing the inferences in Grande's favor, for a period of nearly three months Grande labored under the

12

impression that he was being terminated and he thus maintains that Defendants can be liable for the negligent infliction of emotional distress during this "termination process."[6]

Grande does not cite any authority supporting the proposition that an employer can be found liable for negligent infliction of emotional distress based upon a notice or plan of termination that was never implemented. In *Perodeau*, the Connecticut Supreme Court, in concluding that such claims may only be pursued in the context of a termination from employment, recognized that the line it drew between actionable and non-actionable claims was "somewhat arbitrary." *Perodeau*, 259 Conn. at 758. But the Court explained that the policy underlying its decision was one which sought to avoid chilling productivity and healthy business development by foreclosing liability (and the threat of litigation) for events that are incident to "the inherently competitive and stressful nature of the workplace." *Id*. at 758–59. Since *Perodeau,* a number of courts have concluded that a termination in fact is a necessary prerequisite to an employment-based negligent infliction of emotional distress claim under Connecticut law.

In *Grasso*, 138 Conn. App. at 771–73, the Connecticut Appellate Court construed *Perodeau* narrowly and held that a plaintiff may not recover for negligent infliction of emotional distressed based upon circumstances giving rise to a constructive discharge. The Appellate Court agreed with a superior court decision observing:

> The language of *Perodeau* itself is restrictive. The holding is phrased narrowly: the tort is maintainable only for 'conduct occurring in the termination of employment.' Language such as conduct in the 'discharge process' is not used; such language perhaps would contemplate a more expansive time frame. Conduct justifying the termination, or, on the other hand, compelling the resignation, is not itself the actual termination. Termination means ending, not the conduct which causes the ending.

---

[6] According to the CHRO Findings of Fact, however, Grande was informed that his position was being eliminated "for the following school year, 2017-2018." (Defs.' Mot. Ex. C ¶ 16.) While this suggests that Grande understood that his job was secure for at least the remainder of the current school year, the Court will nonetheless credit Grande's statement that he believed he was in the process of being terminated as early as February 24, 2017.

*Id.* at 772 (quoting *Michaud v. Farmington Community Ins. Agency*, No. CV-010806951S, 2002 WL 31415478, at *3 (Conn. Sup. Ct. September 25, 2002) (brackets omitted)). The Appellate Court further concluded that "the language used in *Perodeau* is supported by policy rationales that buttress the finding that **termination must be a condition precedent** to a negligent infliction of emotional distress claim in the employment context." *Id.* (emphasis added); *see also Rickard v. Nat'l Vision, Inc.*, No. 3:05-CV-1886 (JBA), 2007 WL 9757657, at *6 (D. Conn. July 30, 2007), *report and recommendation adopted on other grounds*, 514 F. Supp. 2d 339 (D. Conn. 2007) ("In this case, plaintiff testified that she was never terminated by National Vision . . . , and without a termination in employment, plaintiff's claim for negligent infliction of emotional distress *ipso facto* fails under *Perodeau*."); *Dembinski v. Pfizer, Inc.*, 628 F. Supp. 2d 267, 274 (D. Conn. 2009) ("Absent any allegation of any wrongful conduct during the course of the Plaintiff's termination, or absent any allegation that the Defendant even terminated the Plaintiff at all, the negligent infliction of emotional distress claim fails as a matter of law."); *accord Groth v. Grove Hill Med. Ctr., P.C.*, No. 3:14-CV-01563 RNC, 2015 WL 4393020, at *8 (D. Conn. July 15, 2015) (explaining that the Supreme Court's decision in *Perodeau* "explicitly distinguishes termination (in some circumstances, actionable) from 'disciplinary or investigatory action arising from actual or alleged employee misconduct' (never actionable)" and that "Connecticut courts have relied on this language to hold that disciplinary actions short of termination (but arguably leading up to termination) cannot form the basis of an NIED claim") (quoting *Perodeau*, 259 Conn. at 769).

Given both the unequivocally restrictive language of *Perodeau* and its policy rationale, Plaintiff's allegations regarding the Defendants' conduct undertaken in anticipation of "termination," where no termination ever occurred, cannot support a claim for negligent infliction of emotional distress. The motion to dismiss Count Eight is granted.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Counts One, Two, Five, and Six for lack of subject matter jurisdiction and GRANTED as to Count Eight for failure to state a claim to relief.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of January 2020.

/s/
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE