**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOHN GRANDE,<br>    *Plaintiff*, | No. 3:19-cv-00184 (KAD) |
| v. | |
| HARTFORD BOARD OF EDUCATION,<br>JAY MIHALKO, CITY OF HARTFORD,<br>    *Defendants.* | January 21, 2021 |

**MEMORANDUM OF DECISION RE:**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 57)**

Kari A. Dooley, United States District Judge:

John Grande ("Grande" or the "Plaintiff") brings this action against the Hartford Board of Education (the "Board"), Jay Mihalko ("Mihalko"), and the City of Hartford (the "City," and, collectively, the "Defendants"). His claims arise out of his employment as a physical education teacher for the Hartford Public School District (the "District"). The Plaintiff alleges that he suffers from tinnitus and needs to wear headphones while working to protect against excessive noise. He alleges, *inter alia*, that the Defendants discriminated against him by creating a hostile work environment in the face of his disability and retaliated against him in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq* (the "ADA").[1]

Defendants now move for summary judgment as to Plaintiff's remaining claims: discrimination, hostile work environment, and retaliation pursuant to the ADA against the Board

---

[1] On January 7, 2020, this Court granted Defendants' motion to dismiss Plaintiff's claims brought pursuant to the Connecticut Fair Employment Practices Act (Counts One, Two, Five, and Six) for lack of subject matter jurisdiction. (*See* ECF No. 47.) The Court also dismissed the Plaintiff's claim for negligent infliction of emotional distress ("NIED") (Count Eight) because Connecticut law only recognizes a cause of action for NIED in the employment context when the employee has suffered unreasonable treatment during the termination process, and it is undisputed that Grande remains an employee of the District.

and the City (Counts Three, Four, and Seven); slander and libel against Mihalko (Count Nine); intentional infliction of emotional distress against the Board and the City (Count Ten); and a violation of the Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 against the Board and the City (Count Eleven). The Court has considered the Defendants' supporting memorandum (ECF No. 57-1) and exhibits, the Plaintiff's opposition (ECF No. 62-1) and exhibits, and the Defendants' reply brief (ECF No. 63) and exhibits. Oral argument was held on September 21, 2020. (ECF No. 66.) For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

**Relevant Facts**

The following facts are drawn from the parties' Local Rule 56(a)(1) Statements of Undisputed Material Facts ("LRS") and from the exhibits in the record. The facts set forth in the Defendants' LRS (ECF No. 57-3) are admitted by the Plaintiff (ECF No. 62-2) unless otherwise indicated.

Grande began working as a physical education teacher for the District in 1989 and served at the Noah Webster MicroSociety Magnet School ("Noah Webster") from the 2008-2009 school year until his reassignment to Batchelder School at the start of the 2017-2018 school year. (Defs.' LRS ¶ 1.) Mihalko served as principal of Noah Webster from approximately 2013 through the fall of 2017. (*Id*. ¶ 2.) According to the Plaintiff, Mihalko's tenure as principal generated an atmosphere of intimidation at Noah Webster, with many teachers complaining about Mihalko's mistreatment. (*Id*. ¶¶ 3–5.)

Grande began wearing headphones for his tinnitus while on cafeteria duty during the 2015-2016 school year, at which time neither Mihalko nor any other administrator commented on the headphones. (*Id*. ¶ 12.) However on October 10, 2016, Mihalko met with Grande and asked whether he had a medical note supporting his need for ear protection. (*Id*. ¶ 13.) While Grande

did not specifically state that he had tinnitus, Grande told Mihalko that his "ears hurt, and they ring all the time." (Grande Dep. Tr. at 62:15–16, Defs.' Ex. 1, ECF No. 57-5.) According to Mihalko, he questioned Grande about the headphones because he was concerned that it created a safety issue if Grande was not able to hear students in the cafeteria and he thought the headphones might convey the message that Grande was not listening to them. (Defs.' LRS ¶ 15.) Grande interpreted Mihalko's conduct at the meeting as hostile. (*Id.* ¶ 16.) That evening, Grande sent Mihalko an email to memorialize their conversation in which he recalled that Mihalko told Grande that he would face disciplinary action if he continued to wear the headphones—a position that Grande informed Mihalko he interpreted as harassment. (*See* Oct. 10, 2016 Email, Defs.' Ex. 4, ECF No. 57-8.) Mihalko forwarded Grande's email to the District's Office of Talent Management. (Defs.' LRS ¶ 18.)

On October 11 and 12, 2016 Grande continued to wear his headphones at work. (*Id.* ¶ 19.) Grande claims that Richard Skowronski, Noah Webster's assistant principal ("Skowronski"), subsequently informed Grande he was not permitted to wear the headphones per Mihalko's directive, citing safety concerns. (*Id.*) On the evening of October 12, Grande sent Skowronski an email in which he thanked Skowronski for his professional demeanor in addressing the situation while indicating that he regretfully believed Skowronski might now be involved in a "potential workplace harassment / bullying claim against Mr. Mihalko," citing what Grande perceived to be Mihalko's "personal vendetta" against him. (October 12, 2016 Email, Defs.' Ex. 5, ECF No. 57-9.) Following this incident the District's Chief Labor and Legal Officer requested documentation from the Plaintiff regarding his medical condition and sent him the Board's harassment policy and complaint forms, but Grande did not provide medical documentation or complete a harassment

complaint, as he was no longer challenged about wearing his headphones.[2]  (Defs.' LRS ¶¶ 25–26.)

Plaintiff was ultimately never disciplined for wearing the headphones and while he admits that he was no longer told that he could not wear ear protection after October 12, 2016, he claims that he "continued to feel harassed by Mihalko after October 12th because he believed Mihalko took actions against him in retaliation for Plaintiff standing up for himself."  (Pl.'s Resp. to Defs.' LRS ¶¶ 23–24, 27.)  Specifically, on October 20, 2016, Mihalko asked Grande to lower the volume of the music in the gym because it was bothering a kindergarten class across the hall, and Grande interpreted this request as mocking his need for ear protection.  (Id. ¶ 31.)  The parties dispute whether kindergarten staff actually complained about the music as Mihalko alleged.  (See Defs.' LRS ¶ 33; Grande Decl. ¶ 20, ECF No. 62-3.)  On October 26 and November 4, 2016, Mihalko again turned down the music in the gym, which Plaintiff likewise interpreted as mocking behavior.  (Pl.'s Resp. to Defs.' LRS ¶ 32.)  According to Grande, in ten years of playing music in the gym he had never received any complaints about its volume.  (Id.)  On November 23, 2016, Mihalko followed up with the Plaintiff by asking whether he had obtained a doctor's note for his medical condition.  (Defs.' LRS ¶ 34.)  According to the Plaintiff, he told Mihalko he had a doctor's note but Mihalko never asked Grande to submit it, and so the note was never provided to the Defendants.  (Grande Decl. ¶ 22; Pl.'s Resp. to Defs.' LRS ¶¶ 34–35.)

Grande filed a complaint with the Connecticut Human Rights Commission ("CHRO") on February 2, 2017, which was served on February 16, 2017 on Julia Wilde, counsel for the Board.  (Defs.' LRS ¶¶  38–39.)  Defendants represent that Mihalko first learned of the CHRO complaint

---

[2] While Grande admits that he did not possess a medical note on October 11 or 12 to support his need for ear protection, he testified that he requested a note from his physician on October 10, 2016, which he received on October 13, and that he so informed the administration of his request for a doctors' note.  (Pl.'s Resp. to Defs.' LRS ¶ 20; Grande Dep. Tr. at 79:10–11, Pl.'s Ex. 2, ECF No. 62-4; see Grande Decl. Ex. C, ECF No. 62-3.)

on March 23, 2017. [3] (*Id*. ¶ 40.)  In January 2017, Noah Webster's School Governance Committee ("SCG"), which is comprised of teachers, parents, and Mihalko, met to discuss the school's annual budget, at which time they explored the potential addition of a Media Specialist position.  (*Id*. ¶¶ 43–44.)  A subsequent survey sent by Mihalko revealed that approximately 86% of Noah Webster staff deemed it important to fill that position.  (*Id*. ¶ 45.)  On February 7, 2017 the SCG met again and recommended that the Media Specialist position be added and a physical education position be eliminated for the upcoming school year.  (*Id*. ¶ 46.)  While Defendants represent that the Media Specialist role was deemed an important position by Mihalko as well as by Hartford Public Schools Superintendent Kate Carbone ("Carbone") and Staffing Specialist Janet Serrano ("Serrano") (*id*. ¶¶ 48–49), Grande claims that Mihalko manufactured the need for a Media Specialist after having eliminated the position the year prior.  (Grande Decl. ¶ 25a.)  In order to accommodate the need for a Media Specialist, Mihalko, Carbone, and Serrano decided to remove one of the two physical education teacher positions at Noah Webster and ultimately retained Plaintiff's colleague, Nick Popolizzio, instead of the Plaintiff.[4]  (Defs.' LRS ¶¶ 50–52.)

Grande's job performance and evaluations were not factored into the decision to eliminate his position.  (*Id*. ¶ 55.)  Pursuant to the collective bargaining agreement between the Board and the Hartford Federation of Teachers, Grande can be reassigned to any school within the District so long as he remains in the physical education program, and Grande acknowledges that both he and teachers in other subject areas have previously been moved to different schools within their

---

[3] Grande objects to this alleged factual statement as unsupported by a citation to record evidence.  (Pl.'s Resp. to Defs.' LRS ¶ 40.)  In their reply Defendants clarify that they rely upon an email sent from Attorney Wilde to Mihalko on March 23, 2017, in which she states that "I am drafting a response to the attached complaint filed with the CHRO and would like to set up a time to talk."  (Mihalko Decl. Ex. E, ECF No. 57-6.)  In his declaration Mihalko avers that he did not know about Grande's CHRO complaint prior to March 23, 2017.  (Mihalko Decl. ¶ 37.)

[4] It is undisputed that Mihalko himself lacked authority to hire or terminate teachers and did not act independently when it came to deciding whether to eliminate teacher positions.  (Defs.' LRS ¶¶ 41–42.)

programs.  (*Id.* ¶¶ 56, 58, 60.)  Grande's job duties and salary as a physical education teacher remain the same no matter what school he is assigned to.  (*Id.* ¶ 59.)

On February 24, 2017, Mihalko met with the Plaintiff as a courtesy to inform him that his position at Noah Webster was being eliminated for the upcoming school year.  (*Id.* ¶¶ 62–63.) Grande recorded this meeting without Mihalko's knowledge and has included a copy of the audio recording in the summary judgment record.  (*See* Grande Decl. Ex. G.)  While Defendants claim that "Plaintiff engaged in threatening, intimidating, and unprofessional behavior toward Mihalko" at the February 24 meeting (Defs.' LRS ¶ 66), Grande asserts that these are false accusations. (Grande Decl. ¶ 25(d).)  On February 26, 2017, Grande sent Mihalko an email in which he stated that he considered the February 24 meeting to constitute a continuation of the workplace harassment that had begun in October 2016.  (Feb. 26, 2017 Email, Defs.' Ex. 9, ECF No. 57-13.)

On March 1, 2017, Plaintiff was again provided a harassment complaint form by the Board but he did not complete it, as by that time he had already submitted his complaint to the CHRO. (Pl.'s Resp. to Defs.' LRS ¶¶ 72–73.)  On March 3, 2017, Mihalko met with Grande to discuss Grande's behavior at the February 24 meeting.  (*Id.* ¶ 74.)  Grande also surreptitiously recorded this meeting and has included a copy of the audio recording in the record.  (*See* Grande Decl. Ex. H.)  During the March 3 meeting, Defendants allege that Grande accused Mihalko of fabricating accusations against him, raised his voice, and behaved unprofessionally.  (Defs.' LRS ¶ 75.) Grande denies these allegations but "admits that he accused Mihalko of fabricating that Plaintiff acted aggressively or threatened Mihalko."  (Pl.'s Resp. to Defs.' LRS ¶ 75.)  On March 8, 2017, Mihalko provided Grande with a verbal warning for his conduct during the February 24, 2017 meeting, which he documented in a letter that was sent to Grande and copied to certain administrators. (Defs.' LRS ¶ 77; Mihalko Decl. Ex. D.)  The letter states in relevant part that:

> during our meeting on February 24, 2017, you put your face within inches of my face as
> we were exiting the office stating, and I quote, "I know what you are doing, and you know
> what, I'm not the one who needs to be worried.  You are the one that needs to be worried.
> I am going to be just fine."

(Mihalko Decl. Ex. D.)  It further states that:

> Based on our discussion and the information you provided, I find that you were threatening
> and intimidating when you met with me on February 24, 2017.  Further, you twice refused
> to acknowledge during the pre-disciplinary meeting on March 3, 2017 that you were aware
> that threatening or intimidating a student or staff member was not appropriate.

(*Id.*)  Mihalko thus recommended in the letter that Grande complete harassment training and

warned "that future misconduct shall subject you to further disciplinary action, up to and including

termination."  (*Id.*)

On March 17, 2017, Grande sent Mihalko an email response to the March 8 verbal warning

in which he accused Mihalko of harassment and copied all of the individuals that had been included

in the notice of the verbal warning, as well as a number of union employees.  (Defs.' LRS ¶ 80;

March 17, 2017 Email, Defs.' Ex. 11, ECF No. 57-15.)  Grande claims that as a result of having

stood up to Mihalko, "Mihalko went on a calculated spree of harassment against Plaintiff," which

included tampering with Grande's teacher evaluations by deleting a most recent highly scored

practice review "in order to manufacture a paper trail that supported his narrative."  (Pl.'s

Statement of Add'l. Material Facts ¶¶ 5–6.)  Plaintiff filed a grievance regarding the reassignment

of his position, which was denied on the basis that Plaintiff was properly reassigned to another

school in the District's physical education program.  (Defs.' LRS ¶ 82.)

Grande suffered a work-related injury on April 17, 2017 and took a medical leave of

absence for the remainder of the school year.  (*Id.* ¶ 87.)  As a result, he received a "nonrated"

evaluation, meaning he did not receive a formal evaluation for the 2016-2017 school year due to

a leave of absence.  (*Id.* ¶¶ 88, 90–92.)  A "nonrated" evaluation has no effect on salary, benefits,

or tenure and is not considered a negative evaluation.  (*Id*. ¶ 89.)  Grande filed an amended complaint with the CHRO on April 25, 2017.  (*Id*. ¶ 94.)  On May 22, 2017, Grande received confirmation of his reassignment to Batchelder School, and thereafter his compensation remained the same as it would had he continued at Noah Webster.  (*Id*. ¶¶ 96–97.)  After Batchelder School closed, Grande began working at Moylan School at the beginning of the 2018-2019 school year, where he continues working to this day and where he has never been prevented from wearing his headphones.  (*Id*. ¶¶ 100–01.)

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the nonmoving party.'"  *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  Accordingly, the moving party satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks and citations omitted).  Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial."

*Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)).  "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (internal citations omitted).

In assessing the presence or absence of a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party."  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

As an initial matter the Defendants have argued that the City is entitled to summary judgment on all claims asserted against it because it is a legal entity separate from the Board of Education and is not Grande's employer.  At oral argument, Grande conceded to the entry of summary judgment on this basis and the Court therefore GRANTS summary judgment to the City of Hartford on all pending claims asserted against it—*i.e.*, Counts Three, Four, Seven, Ten, and Eleven.  Grande also acknowledged that he is not otherwise contesting the Defendants' motion for summary judgment with respect to his disability discrimination claim under the ADA (Count

Three), intentional infliction of emotional distress claim (Count Ten), or the civil rights claim brought pursuant to 42 U.S.C. § 1983 (Count Eleven).  The Court accordingly GRANTS summary judgment to the Board on these claims.

The remaining claims to be resolved in the instant memorandum of decision, which the parties addressed at oral argument, are the hostile work environment and retaliation claims under the ADA against the Board (Counts Four and Seven, respectively), and the libel claim against Mihalko (Count Nine).[5]  These claims are addressed in turn.

**ADA Hostile Work Environment**

"Hostile work environment claims under the ADA, which are evaluated under the same standards as hostile work environment claims under Title VII, arise 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 300–01 (S.D.N.Y. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks and citation omitted).  "To prevail on a hostile work environment claim," then, the plaintiff "must show '(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer.'"  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d. Cir. 2019) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)) (internal quotation marks omitted).  "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be 'severe or pervasive enough to create an objectively hostile or abusive work environment.'"  *Id*. (quoting *Alfano*, 294 F.3d at 374).  "Courts look to the totality

---

[5] At oral argument Grande also clarified that he has abandoned his slander claim in Count Nine against Mihalko.

of the circumstances to determine whether a plaintiff has met this burden, including proof of 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).   In addition, "[a] hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status (*e.g.*, his disability), rather than other reasons." *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 326 (D. Conn. 2014).  "That is because the ADA protects against disability discrimination and is not otherwise a general civility code for the American workplace." *Id.*

Grande largely bases his hostile work environment claim on the instances in which Mihalko lowered the music in the gym, which he characterizes as "a direct mocking of Plaintiff as a result of his disability."  (Pl.'s Mem. at 7.)  Grande also asserts that Mihalko's harassment "affected everything about his work day[sic]," rendering him "constantly on guard and ready to record interactions with Mihalko and other administrators for fear that if he didn't, facts would be misconstrued against him." (*Id.*)  However, these contentions speak only to the subjective element of a hostile work environment claim.  On the objective side of the analysis, the evidence is comprised only of three incidents over a two-to-three-week period, in which Mihalko allegedly mocked Grande by either asking him to turn down the music in the gym or by turning it down himself.  The Board argues that these events constitute neither severe nor pervasive abusive conduct.  The Court agrees.

Even accepting Grande's assessment of Mihalko's motivation, *i.e.*, to mock him, the evidence would not "permit a reasonable jury to conclude that [his] workplace was 'permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to

alter the conditions of [his] employment.'" *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (quoting *Harris*, 510 U.S. at 21) (internal quotation marks omitted).  On this point the case law is clear that "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Id.*  Indeed, courts in this Circuit routinely dismiss hostile work environment claims at the pleading and summary judgment stage when predicated on similarly infrequent or seemingly mild episodes of alleged harassment.  *See, e.g.*, *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 14-CV-5125 (CBA) (RER), 2018 WL 1603872, at *10 (E.D.N.Y. Mar. 30, 2018), *aff'd*, 767 F. App'x 123 (2d Cir. 2019) (allegations that supervisor critiqued plaintiff's body language and that plaintiff was reprimanded and also the subject of a mocking comment did not plausibly allege "severe or pervasive" harassment giving rise to "abusive working environment") (quotation marks omitted); *Giambattista v. Am. Airlines, Inc.*, 5 F. Supp. 3d 284, 294–95 (E.D.N.Y. 2014), *aff'd*, 584 F. App'x 23 (2d Cir. 2014) ("offensive quips about [plaintiff's] perceived disability, including calling her 'crazy' and implying that she should be taken away by psychiatrists" were insufficient to state a hostile work environment claim); *Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 151–52 (D. Conn. 2008) (granting summary judgment because "a reasonable jury could not conclude that the alleged incidents of discriminatory harassment were so severe and pervasive so as to alter the terms of [the plaintiff's] employment" where the facts construed in the plaintiff's favor could establish that the plaintiff "was subjected to two caricatures, name-calling, … had his cane taken away on two occasions" and was allegedly harshly criticized by a superior).

At oral argument Grande asked the Court to consider his claim in the broader context of the general atmosphere of bullying and intimidation at Noah Webster that allegedly attended Mihalko's tenure as principal.  According to Grande "many teachers had complaints about the way

Mihalko treated them," "Mihalko began treating the majority of the staff worse" at the beginning of the 2014-15 school year, with his disrespect and intimidation of staff increasing each year, and "86.5% of the teachers in the union voted that they did not have confidence in him and wanted him out of the school." (Defs.' LRS ¶¶ 3–4, 7.) Assuming, without deciding, that Grande offers competent evidence in this regard, this evidence of school-wide mistreatment actually mitigates against Grande's claim of hostile work environment discrimination, because it substantially undermines the notion that Grande was the victim of an abusive workplace *because of his disability*. *See Marini*, 64 F. Supp. 3d at 326 ("A hostile work environment claim . . . requires proof that hostile acts were based on plaintiff's protected status . . . rather than other reasons").

For similar reasons, Grande's contention that Mihalko tampered with Grande's personnel file by deleting a positive teacher evaluation (Pl.'s Add'l. Statement of Material Facts ¶ 6) fails to create a triable issue as to whether Mihalko targeted Grande because of his tinnitus. Aside from the fact that Grande cites only to his own declaration and testimony in support of this assertion, even assuming the evidence is sufficient for a jury to infer that Mihalko did, in fact, delete the evaluation,[6] there is no circumstantial evidence tending to suggest that Mihalko did so because of Grande's disability. *See, e.g.*, *Sosa v. New York Div. of Human Rights*, No. 11-CV-5155 (NGG) (VVP), 2015 WL 5191205, at *12–*13 (E.D.N.Y. Sept. 4, 2015) (granting summary judgment to defendant where, *inter alia*, the plaintiff "has not linked any hostility to her disability," including by failing to produce evidence that co-worker threatened the plaintiff because of her disability, as the plaintiff's "own speculation is an insufficient nexus to make out a hostile work environment

---

[6] The Court observes that the evidence of such tampering is highly speculative. In his deposition Grande testified that he received an evaluation that was entered into the school district's electronic system under Mihalko's name (Grande Dep. Tr. at 251:4, Pl.'s Ex. 2), which Grande printed before it disappeared. (*Id*. at 250:21–22.) When asked how he knew that Mihalko was responsible for deleting the evaluation, Grande stated that only school administrators can access and eliminate such files. (*Id*. at 251:5–6.) The Court is aware of no other record evidence to support Grande's claims of tampering by Mihalko.

claim").  The same conclusion holds with respect to Grande's contention that Mihalko falsely accused Grande of threatening him when documenting the verbal warning he issued to Grande in March 2017.  While Grande would ask the jury to infer that every incident of subsequent workplace conflict that he experienced with Mihalko trace back to Grande's use of the headphones while on cafeteria duty, the record provides no basis for drawing such a sweeping conclusion.  The Board is therefore entitled to the entry of summary judgment on Grande's hostile work environment claim.

**ADA Retaliation**

"The ADA [also] makes it unlawful for an employer to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'"  *Saviano v. Town of Westport*, No. 3:04-CV-522 (RNC), 2011 WL 4561184, at *4 (D. Conn. Sept. 30, 2011) (quoting 42 U.S.C. § 12203(a)). "Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  "In order to establish a prima facie case of retaliation, [the Plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Id*.  "Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision."  *Id*. at 721.  "The plaintiff's burden in this regard is *de minimis*, and the court's role in evaluating a summary judgment request is to determine only

whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Hicks*, 593 F.3d at 164 (quotation marks and citation omitted).

The Board concedes that Grande engaged in activity protected by the ADA for purposes of the retaliation claim, acknowledging both Grande's assertion of his need to wear ear protection in October 2016 as well as his filing of complaints with the CHRO on February 2, 2017 and April 25, 2017.  Notwithstanding, the Board argues that Grande's retaliation claim fails as a matter of law because there is no evidence from which a jury could conclude that he suffered an adverse employment action.  "'[A]dverse actions' in the retaliation context are defined more broadly than in the discrimination context." *Lewis v. Boehringer Ingelheim Pharm., Inc.*, 79 F. Supp. 3d 394, 413 (D. Conn. 2015).  "For an allegedly retaliatory action to be materially adverse, the plaintiff must show that the action could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotation marks and citation omitted).

Grande makes no claim that his transfer to Batchelder School constituted an adverse employment action, and it is undisputed that Grande's transfer did not affect his compensation or job responsibilities.  (Defs.' LRS ¶¶ 59, 97.)  Grande instead maintains that Mihalko took adverse employment action against him when he allegedly falsely accused Grande of threatening him in the March 8, 2017 verbal warning and when he deleted a positive evaluation from Grande's personnel file.  He cites the Court to *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001), where the Second Circuit held that the plaintiff's suspension without pay for one week was sufficient to constitute an adverse employment action for purposes of her ADA retaliation claim while also noting "that lesser actions may [also] be considered adverse employment actions," including "*negative evaluation letters, express accusations of lying*, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's

insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." (quotation marks and citation omitted) (emphasis added).

In response, the Board asserts that even if Mihalko's conduct might be considered adverse action for purposes of a retaliation claim, Grande's *prima facie* case otherwise fails because he offers no evidence demonstrating a causal connection between the allegedly adverse actions and Grande's exercise of protected activity.  The Court agrees with the Board and therefore need not decide whether the issuance of the verbal warning could be considered "adverse action" in this context.  "[E]ven without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quotation marks and citation omitted).  Grande has not identified any direct evidence that casually connects his assertion of his need to wear ear protection in October 2016 with the verbal warning that was issued on March 8, 2017, and the nearly five months that lapsed between the two incidents significantly undermines any inference of causal relatedness. *See, e.g.*, *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014) ("[C]ourts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation").[7]

While the verbal warning issued on March 8, 2017 was within weeks of the filing of Grande's CHRO complaint on February 16, Grande fails to identify any evidence from which a jury could conclude that Mihalko was aware of the CHRO complaint when he issued the verbal

---

[7] The same conclusion holds with respect to Grande's claim that Mihalko tampered with his personnel file, which allegedly occurred sometime in March 2017.  (*See* Grande Decl. ¶ 27.)

warning.  As noted previously, Mihalko represents that he learned of the complaint on March 23, 2017, when he received an email from counsel for the Board; he states that "[p]rior to receiving Attorney Wilde's email, I was unaware that John Grande had filed a CHRO complaint."  (Mihalko Decl. ¶ 37; *see also* Mihalko Decl. Ex. E.)  In his deposition, Grande testified that his contrary belief that Mihalko was aware of the CHRO complaint before March 23 stemmed from Grande's knowledge that "corporate counsel received a fax from the CHRO on February 16th," yet Grande admitted that he had no personal knowledge of whether Mihalko received that fax.  (Grande Dep. Tr. at 147:5–13, Defs.' Ex. 1.)  Because Grande's "belief" amounts to "mere speculation or conjecture as to the true nature of the facts," *Hicks*, 593 F.3d at 166, it cannot create a triable issue of fact as to whether Mihalko knew that Grande had exercised his protected rights by filing a complaint with the CHRO at the time that Mihalko took the allegedly adverse employment actions. *See also id.* at 167 ("[A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove").[8]  Accordingly, there is no evidentiary foundation for an inference that the adverse action was causally related to the protected activity.  The Court grants summary judgment to the Board on the ADA retaliation claim.

### Libel

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation."  *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014).  "At common law, to establish a prima facie case of defamation, the plaintiff must demonstrate that: (1)

---

[8] Defendants also point to other evidence in the record that tends to negate Grande's ability to sustain an inference of retaliation.  For example, Grande admits that he believed Mihalko called the February 24, 2017 meeting that led to the verbal warning because Mihalko did not appreciate the way that Grande had advocated for a fellow union member earlier that day (Defs.' LRS ¶¶ 65, 69), which is an alleged motive that apparently has nothing to do with the exercise of Grande's rights under the ADA.  Grande also admits that he believes Mihalko's "personal vendetta" against Grande arose in part from the fact that other staff looked to Grande as a leader and that Grande did not succumb to Mihalko's intimidation tactics.  (*Id.* ¶ 22.)

the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430, 125 A.3d 920 (2015) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627–28, 969 A.2d 736 (2009)). "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 431 (quoting *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004)). "[T]o be actionable, the statement must be false . . . and under the common law, truth is an affirmative defense to defamation . . . the determination of the truthfulness of a statement is a question of fact for the jury." *Id.* (quoting *Cweklinsky*, 267 Conn. at 228–29). The statement must also "convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *Crismale v. Walston*, 184 Conn. App. 1, 18, 194 A.3d 301 (App. Ct. 2018).

Grande's libel claim centers on allegedly defamatory statements rendered by Mihalko in the March 8, 2017 letter memorializing Mihalko's verbal warning. Grande asserts that the letter is defamatory because it falsely accused Grande of having threatened Mihalko. The letter from Mihalko to Grande opens by stating that it "summarizes a pre-disciplinary meeting held with you on March 3, 2017 as it relates to an incident that occurred on or about February 24, 2017." (Mihalko Decl. Ex. D.) As noted previously the letter goes on to state that:

> during our meeting on February 24, 2017, you put your face within inches of my face as we were exiting the office stating, and I quote, "I know what you are doing, and you know what, I'm not the one who needs to be worried. You are the one that needs to be worried. I am going to be just fine."

(*Id.*) In the letter Mihalko also indicates that "I find that you were threatening and intimidating when you met with me on February 24, 2017," and recommends that Grande complete harassment

training.  (*Id*.)  It also warns "that future misconduct shall subject you to further disciplinary action, up to and including termination."  (*Id*.)

Mihalko first maintains that the statements made in the letter are not actionable because they are not false.  He asserts that Grande did engage in threatening behavior and upon learning that his position was eliminated, uttered such phrases as "I'm not worried" and "I don't think it's over."  In response, Grande relies upon the audio recording of his meeting with Mihalko, which confirms that Grande never actually uttered the words, "you are the one that needs to be worried," as he is quoted as stating in the March 8 letter.  And it is this missing phrase which would support the accusation that he threatened Mihalko.  The audio recording instead reveals that after Mihalko told Grande he was "done" in response to Grande's questions about the reasons for the elimination of his teaching position, Grande said to Mihalko, "I don't think it's over, I really don't."  (Audio Recording of February 24, 2017 Meeting at 2:18–20, Grande Decl. Ex. G.)  Grande also stated that he believed the way Mihalko broached this topic was "totally unprofessional" but indicated that he did not find his behavior surprising.  (*Id*. at 2:27–33.)  Grande further stated that Mihalko "could save the 'best of luck' because it's fake, but then again, I'm sure this will be coming up soon.  I'm not worried."  (*Id*. at 2:35–46.)  Given these discrepancies between the statements recorded by Grande and those set forth in the verbal warning letter, the Court concludes that it is a question for the jury as to whether Mihalko published a false statement or statements when he recalled and then quoted Grande as saying, "I'm not the one that needs to be worried.  You are the one that needs to be worried."[9]

---

[9] To the extent that Grande focuses on Mihalko's statement that, "I find that you were threatening and intimidating when you met with me on February 24, 2017," this is a non-actionable statement of opinion.  *See, e.g.*, *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 111, 448 A.2d 1317 (1982) ("An opinion, . . . is a personal *comment* about another's conduct, qualifications or character that has some basis in fact").

That does not end the Court's inquiry, however. Mihalko further asserts that even if Grande has identified a triable issue as to the truthfulness of Mihalko's accusation, Grande has not provided an evidentiary basis that would support a finding of actual malice on the part of Mihalko. The Court disagrees. "In an action for defamation, a public official is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves by clear and convincing evidence that the falsehood was published with 'actual malice.'" *Kelley v. Bonney*, 221 Conn. 549, 580, 606 A.2d 693 (1992) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Under Connecticut law, "a public school teacher is a public official for defamation purposes." *Id*. at 581; *see also, e.g.*, *Cevetillo v. Lang*, No. CV196031687, 2019 WL 7597451, at *6 (Conn. Super. Ct. Dec. 13, 2019) (dismissing defamation claim brought by public school teacher due to lack of record evidence of actual malice).

Thus, to prevail on his claim Grande "must prove that the defamatory statement was made with actual malice, such that the statement, when made, was made with actual knowledge that it was false or with reckless disregard of whether it was false." *Gambardella*, 291 Conn. at 628 (quotation marks and citations omitted). "The Supreme Court requires proof of actual malice by 'convincing clarity,' which the Connecticut Supreme Court has interpreted as requiring that the 'the probability that [the facts asserted] are true or exist is substantially greater than the probability that they are false or do not exist.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (quoting *New York Times Co.*, 376 U.S. at 285, and *Dacey v. Conn. Bar Ass'n*, 170 Conn. 520, 537, 368 A.2d 125 (1976)) (internal citation omitted). "Clear and convincing proof is 'highly probable' and 'leaves no substantial doubt.'" *Id.* (quoting *Holbrook v. Casazza*, 204 Conn. 336, 358, 528 A.2d 774 (1987)).

Although the record contains circumstantial evidence from which a history of personal animus between Mihalko and Grande can be inferred, such personal animus alone is insufficient to establish actual malice.  *See Gleason*, 319 Conn. at 451–52 ("Evidence of ill will or bad motives will support a finding of actual malice only when combined with other, more substantial evidence of a defendant's bad faith.") (quotation marks and citation omitted).  Instead, Grande must identify evidence from which a jury could conclude with convincing clarity that Mihalko actually knew, at the time that he charged Grande with having threatened him, that Grande never uttered the allegedly false statement quoted in the verbal warning letter, or at least acted with reckless disregard for the truth of his accusation.

The Court first observes that Mihalko's mere presence at the February 24, 2017 meeting, at which the evidence will establish Grande did NOT utter the threatening phrase attributed to him, permits an inference that Mihalko knew that the statement in the March 8, 2017 letter was false. While not a required inference and while, even if drawn, not sufficient to create a triable issue of fact on the issue of actual malice alone, Grande also points to evidence of the March 3, 2017 pre-disciplinary meeting with Mihalko in support of his claim that he can demonstrate actual malice. As noted previously, Grande also recorded the March 3, 2017 meeting without Mihalko's awareness, during which Mihalko set forth his recollection of the parties' February 24 interaction. Specifically, and as relevant here, Grande's audio recording of that meeting reflects that Mihalko stated that he remembered Grande putting his face near Mihalko's face and stating, "I'm not the one that needs to be worried, you're the one that needs to be worried."  (Audio Recording of Mar. 3, 2017 Meeting at 3:02–08, Grande Decl. Ex. H.)  Grande immediately denied this allegation, stating, "No, that's not what I said.  I said, '*I'm not worried*,'" warning Mihalko that "I'm not going to sit here and let you make things up; I will address it."  (*Id*. at 3:08–3:22.)  Without

acknowledging Grande's denial, Mihalko proceeded to explain to Grande that "I felt that that was threatening and intimidating" and asked for Grande's "take on the situation." (*Id.* at 3:24–3:30.) Grande responded by questioning why it took Mihalko a full week to "manufacture" this claim—asking why, if Mihalko perceived Grande's conduct as threatening or intimidating, he did not address the issue sooner. (*Id.* at 3:30–3:46.) Notwithstanding Grande's unequivocal denial, Mihalko reiterated his accusation five days later when he sent the March 8, 2017 letter.

Accordingly, the Court agrees with Grande that the reasonable inferences to be drawn from the record evidence, in combination with a documented history of personal animus between Mihalko and Grande, create a triable issue of fact with respect to actual malice. While the jury could infer, on the one hand, that the parties' March 3 exchange and the March 8 letter reflected Mihalko's sincere but inaccurate recollection of a contentious meeting that had occurred on February 24, the following facts in combination also permit the contrary inference that Mihalko either knew Grande never uttered the quoted threat or acted with reckless disregard for the veracity of the statement: 1) Mihalko was present at the February 24, 2017 meeting at which the statement was not made; 2) Grande expressly denied making the threatening statement at issue at the March 3 meeting with Mihalko and even accused Mihalko of fabricating the threat; 3) Mihalko did not respond to Grande's denial or accusation or otherwise depart from his scripted warning upon hearing Grande's denial and accusation; and 4) Mihalko proceeded to quote (as opposed to paraphrase) Grande's alleged threat verbatim in the March 8 letter despite Grande's denial and accusation. Thus the question of whether Mihalko conveyed a non-actionable "negligent misstatement of fact" in characterizing Grande's perceived threatening conduct, as opposed to displaying an actionable "purposeful avoidance of the truth," *Gambardella*, 291 Conn. at 637

(quotation marks and citation omitted), is a question for the jury, as is, in the alternative, the issue of whether Mihalko actually knew the statement was false.

Mihalko alternatively argues that he is entitled to a qualified privilege, rendering the March 8, 2017 letter not actionable.  But the Court's conclusion with respect to the issue of actual malice also renders summary judgment inappropriate on the question of whether Mihalko is entitled to a qualified privilege for "statements made in the course of [his] official duties."  *Miles v. Perry*, 11 Conn. App. 584, 594, 529 A.2d 199 (App. Ct. 1987).  The elements of this affirmative defense "are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only."  *Id*. at 595. However, a qualified privilege "may be defeated if it can be established that the holder of the privilege acted with malice in publishing the defamatory material."  *See Gambardella*, 291 Conn. at 630.  This question of "whether the applicable privilege . . . has been defeated through its abuse, . . . is a question of fact."  *Id*. at 628.  Thus, the issue of whether the privilege has been abused as a result of Mihalko having acted with malice is a question that must be resolved by the jury, for the reasons previously discussed.  Malice, in this context, can be demonstrated by "a showing of *either* actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, *or* malice in fact, i.e., publication of a false statement with bad faith or improper motive."  *Id*. at 630.[10]

---

[10] Grande argues for the first time in his supplemental brief that Mihalko may not rely upon the qualified privilege because "the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest [and] . . . the content of the publication is excessive." (Pl.'s Supp. Mem. at 5, ECF No. 68 (quoting *Bleich v. Ortiz*, 196 Conn. 498, 504, 493 A.2d 236 (1985)) (emphasis eliminated).)  The Court declines to consider arguments that were not advanced in the Plaintiff's opposition to the motion for summary judgment or at oral argument and which were outside the scope of the supplemental briefing ordered by the Court.  However, to the extent that Grande seeks to defeat application of the qualified privilege on the grounds that Mihalko acted in bad faith or did not limit his allegedly libelous statements to a proper purpose and/or publish them to proper parties, these are questions that cannot be resolved on the current record and must be determined by the trier of fact.

Finally, Mihalko asserted in his opening brief that Grande's libel claim fails for the additional reason that he has not pled and cannot prove that he suffered actual damages as a result of Mihalko's allegedly libelous statements.  Because the parties did not address this issue in their respective memoranda of law with citation to any authority or record evidence, the Court ordered supplemental briefing on the question of whether Grande must prove actual damages to prevail upon his libel claim and, if so, whether the record supplies a basis for finding a genuine issue of material fact on the existence of actual damages.  (*See* ECF No. 67.)  Having considered the parties' supplemental briefs (ECF Nos. 68, 69), the Court concludes that Grande need not prove actual damages and may proceed to trial on a theory of libel *per se*.

"Statements deemed defamatory per se are ones in which the defamatory meaning of the speech is apparent on the face of the statement."  *Silano v. Cooney*, 189 Conn. App. 235, 242, 207 A.3d 84 (App. Ct. 2019) (quotation marks and citation omitted).  Connecticut law "has generally recognized two classes of defamation per se: (1) statements that accuse a party of a crime involving moral turpitude or to which an infamous penalty is attached, and (2) statements that accuse a party of improper conduct or lack of skill or integrity in his or her profession or business and the statement is calculated to cause injury to that party in such profession or business."  *Id.* (quotation marks and citation omitted).  "Once the plaintiff has established that the words are false and actionable per se, barring any statutory provision to the contrary, she is entitled under Connecticut law to recover general damages without proof of special damages."  *Id.* (quoting *Miles*, 11 Conn. App. at 602).  Despite Mihalko's contrary assertions, there is no question that the allegedly libelous statement contained in Mihalko's March 8 letter challenged the propriety of Grande's integrity or conduct in his teaching profession.  Indeed, after setting forth the allegedly false statement concerning Grande's words and body language during the February 24 meeting, the letter proceeds

to extrapolate from that allegedly libelous statement the conclusion that Grande was "threatening and intimidating," toward Mihalko, that Grande needed to complete harassment training, and that Grande's "conduct was wholly inappropriate and unacceptable," in violation of Hartford Public Schools policy.  (Mihalko Decl. Ex. D.)  The letter further warns "that future misconduct shall subject you to further disciplinary action, up to and including termination."  (*Id.*)  That the allegedly libelous statements were relied upon to support a determination that Grande had engaged in misconduct as a teacher and were memorialized in a formal disciplinary letter and copied to District administrators thus supports the inference not only that the statements could have caused injury to Grande in his teaching profession but that they were calculated to do so.  Mihalko's contention that Grande cannot prove Mihalko's "intent to injure his reputation" is therefore without merit and must be resolved by the trier of fact.  (*See* Defs.' Supp. Mem. at 3 (emphasis eliminated).)

Because Grande's claim is actionable as libel *per se*, he need not prove special damages, and he may proceed to trial on his libel claim against Mihalko (Count Nine).[11]

**Conclusion**

For the foregoing reasons, the Defendants' motion for summary judgment is granted as to Counts Three, Four, Seven, Ten, and Eleven, and denied as to Count Nine.  The Clerk of Court is directed to terminate the Hartford Board of Education and the City of Hartford as Defendants in this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of January 2021.

*/s/ Kari A Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[11] The Court therefore need not decide at this juncture whether the statements are also actionable on the basis of having charged Grande with a crime to which an infamous penalty is attached, as Grande submits.